UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MEGAN S. HISSIN,

                                      Plaintiff,                Case # 17-CV-1264-FPG

v.                                                            DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                      Defendant.
_____

## INTRODUCTION

Plaintiff Megan S. Hissin brings this action pursuant to the Social Security Act seeking review of the final decision of the Commissioner of Social Security that denied her application for Disability Insurance Benefits ("DIB") under Title II of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. § 405(g). Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 11, 16. For the reasons that follow, the Commissioner's motion is DENIED, Hissin's motion is GRANTED, and this matter is REMANDED to the Commissioner for further administrative proceedings.

In addition, Hissin moves to supplement the administrative record with additional evidence. ECF No. 12. Hissin's motion to supplement is DENIED AS MOOT.

## BACKGROUND

In December 2013, Hissin protectively applied for DIB with the Social Security Administration ("the SSA"). Tr.[1] 96. She alleged disability since September 2012 due to bipolar disorder, anxiety, Irritable Bowel Syndrome, and Ehler-Danlos Syndrome. Tr. 206, 210. On June 2, 2016, Hissin and a vocational expert ("VE") testified at a video hearing before Administrative

---

[1] "Tr." refers to the administrative record in this matter. ECF No. 7.

1

Law Judge P. H. Jung ("the ALJ"). Tr. 27. On June 16, 2016, the ALJ issued a decision finding that Hissin was not disabled. Tr. 10-20. On October 6, 2017, the Appeals Council denied Hissin's request for review. Tr. 1-3. This action seeks review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

### II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ

proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*Id.* § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

# DISCUSSION

## I. The ALJ's Decision

The ALJ analyzed Hissin's claim for benefits under the process described above. At step one, the ALJ found that Hissin had not engaged in substantial gainful activity since the alleged onset date except between July 2014 and February 2015. Tr. 12. At step two, the ALJ found that Hissin has several severe impairments, including depression, panic disorder, bipolar disorder, asthma, and degenerative disc disease of the lumbar spine. Tr. 12-13. The ALJ concluded that, although Hissin suffered from post-concussive syndrome as a result of a February 2015 motor vehicle accident, the condition was nonsevere. Tr. 13. At step three, the ALJ found that these impairments, alone or in combination, did not meet or medically equal any Listings impairment. Tr. 13.

Next, the ALJ determined that Hissin retains the RFC to perform sedentary work[2] with additional limitations. Tr. 15. At step four, the ALJ found that Hissin cannot perform her past relevant work. Tr. 19. At step five, the ALJ relied on the VE's testimony and found that Hissin can adjust to other work that exists in significant numbers in the national economy given her RFC, age, education, and work experience. Tr. 19-20. Specifically, the VE testified that Hissin can work as an order clerk, document preparer, and charge account clerk. Tr. 20. Accordingly, the ALJ concluded that Hissin was not disabled. *Id.*

---

[2] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a); *see also* SSR 96-9P, 1996 WL 374185, at *3 (S.S.A. July 2, 1996).

## II. Analysis

Hissin argues, *inter alia*, that the Appeals Council erred when it declined to consider a new treating physician opinion that she submitted after the ALJ's decision. On June 13, 2016, John Leddy, M.D.—who treated Hissin's post-concussive syndrome—completed a "Neurologic Questionnaire" in which he identified functional limitations resulting from her condition. *See* Tr. 91-95. Hissin submitted this opinion to the Appeals Council, but it denied review.

20 C.F.R. § 404.970 permits claimants to submit additional evidence to the Appeals Council if certain requirements are met. The evidence must be new and material, must relate to the period "on or before the date of the hearing decision," and must create a reasonable probability that it would "change the outcome of the decision." 20 C.F.R. § 404.970(a)(5). The claimant must also show good cause for not submitting the evidence sooner. *Id.* § 404.970(b). In this case, the only reason the Appeals Council gave for rejecting Dr. Leddy's opinion was that it did not "show a reasonable probability that it would change the outcome of the decision." Tr. 2.

In this respect, the Appeals Council erred. As a general matter, when the Commissioner does not adequately explain the rationale for a decision, the Court "cannot provide meaningful judicial review." *Jones v. Barnhart*, No. CV-04-2772, 2004 WL 3158536, at *7 (E.D.N.Y. Feb. 3, 2004). The need for explanation is heightened with respect to treating-source opinions due to the treating physician rule. That rule instructs the ALJ to give controlling weight to a treating physician's opinion when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(c)(2); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). An ALJ may discount a treating physician's opinion if it does not meet this standard, but he must "comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion."

5

*Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004) (per curiam); *see also* 20 C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give [the claimant's] treating source's opinion.").

The treating physician rule applies both to the ALJ and the Appeals Council.[3] *See Durrant v. Berryhill*, No. 16-CV-6781, 2018 WL 1417311, at *4 (W.D.N.Y. Mar. 22, 2018) (collecting cases); *Brown v. Comm'r of Soc. Sec.*, No. 17-CV-1107, 2019 WL 2441862, at *4 (W.D.N.Y. June 12, 2019) (same). Consequently, like the ALJ, the Appeals Council must provide an "explicit analysis" of the treating physician's opinion and cannot reject it with boilerplate language. *See Patrick M. v. Saul*, No. 18-CV-290, 2019 WL 4071780, at *7 (N.D.N.Y. Aug. 28, 2019) (Appeals Council violated treating physician rule when it stated only that treating-source opinion "does not show a reasonable probability that it would change the outcome of the decision").

Judged by this standard, the Appeals Council's stated rationale for declining to consider Dr. Leddy's opinion is clearly deficient, and more analysis is required. *See Patrick M.*, 2019 WL 4071780, at *7.

The Commissioner responds that the Appeals Council's decision was reasonable because the opinion (1) was on a boilerplate form, (2) contained "only the most generic of information," and (3) did not include detailed explanation or treatment information. ECF No. 16-1 at 29-30. The Commissioner also argues that Hissin did not provide good cause to justify the late filing. *Id.* at 30. These arguments fail, however, because the Appeals Council did not articulate any of these

---

[3] "The Second Circuit has not squarely addressed the Appeals Council's obligation to apply the treating physician rule when it denies review." *Patrick M. v. Saul*, No. 18-CV-290, 2019 WL 4071780, at *7 (N.D.N.Y. Aug. 28, 2019). But as the Commissioner acknowledges, evidence submitted to the Appeals Council "becomes part of the administrative record subject to judicial review." ECF No. 16-1 at 29. If the Appeals Council were not required to provide good reasons for rejecting a treating physician's opinion, this Court would be placed in the position of having to "apply the treating physician analysis" in the first instance, when that analysis "must initially be applied by the Commissioner." *Patrick M.*, 2019 WL 4071780, at *7.

reasons to justify its conclusion. *See Newbury v. Astrue*, 321 F. App'x 16, 18 (2d Cir. 2009) (summary order) ("A reviewing court may not accept appellate counsel's post hoc rationalizations for agency action." (internal quotation marks omitted)).

Moreover, the Commissioner's argument is unpersuasive because the opinion was not so facially vague or unreliable as to lack probative value. To the contrary, there are factors that would justify giving it controlling weight under the treating physician rule: Dr. Leddy treated Hissin's post-concussive condition consistently since onset; he references specific medical records and tests that support his conclusion; and his diagnoses and conclusions find support elsewhere in the record. *See* Tr. 91-95, 692-97, 741-42, 757-59; *see also* 20 C.F.R. § 404.1527(c)(2)-(6). This is not to say that Dr. Leddy's opinion *must* be given controlling weight, only that it would not necessarily be unreasonable to do so. Thus, beyond its failure to provide a rationale, the Court cannot agree with the Appeals Council's conclusion that Dr. Leddy's opinion was insufficiently probative under § 404.970(a)(5).

Finally, the Commissioner contends that any error in failing to consider Dr. Leddy's opinion is harmless because the RFC already accounted for the limitations that Dr. Leddy identified. Specifically, the ALJ found that Hissin could perform simple, repetitive, routine tasks with no production rate of pace; tolerate few or infrequent changes in a routine work setting; and interact frequently with the public. *See* Tr. 15. But while some of Dr. Leddy's opinions are consistent with the RFC, others are more stringent. For example, Dr. Leddy opines that, as a result of her concussion, Hissin has reduced concentration, moderate difficulties with verbal and visual memory, moderate limitations with respect to visual reasoning, and impaired vision function. Tr. 91-95. The RFC does not impose any limitations related to impaired vision function or reasoning and does not fully reflect the potential limitations concerning Hissin's inability to concentrate.

7

Indeed, the vocational expert testified that an individual unable to work one hour in an eight-hour workday could not maintain competitive employment. Tr. 68.

Accordingly, the Appeals Council's error was not harmless. Remand for further proceedings is therefore appropriate pursuant to sentence four of § 405(g). *See Allborty v. Comm'r of Soc. Sec.*, No. 14-CV-1428, 2016 WL 770261, at *8 (N.D.N.Y. Jan. 28, 2016). On remand, the Commissioner is directed to consider Dr. Leddy's opinion as well as the evidence Hissin identifies in her motion to supplement. *See* ECF No. 12. Given the Court's conclusion, it need not address Hissin's other arguments.

## CONCLUSION

For all of the reasons stated, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 16) is DENIED and Hissin's Motion for Judgment on the Pleadings (ECF No. 11) is GRANTED. This matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion, pursuant to sentence four of 42 U.S.C. § 405(g). Hissin's motion to supplement the record (ECF No. 12) is DENIED AS MOOT. The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: September 9, 2019
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court